**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ERIC DEMETRIUS EVANS, 249159** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:07-CV-345-MHT** |
| | ) | |
| **WILLIE THOMAS, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

## SUPPLEMENTAL SPECIAL REPORT

Come now the Defendants, Willie Thomas, Richard Allen, Mark Loman and Robert Rogers, by and through Troy King, Attorney General for the State of Alabama, and in accordance with this Honorable Court's Order of June 4, 2007, do hereby submit the following Supplemental Special Report.

## PARTIES

1. The plaintiff, Eric Demetrius Evans, is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated at the Elmore Correctional Facility in Elmore, Alabama.

2. Plaintiff has named the following Defendants:

    a. Willie Thomas, who is employed as a Warden III at the Elmore Correctional Facility in Elmore, Alabama.

    b. Richard Allen, who is employed as the Commissioner of the Alabama Department of Corrections in Montgomery, Alabama.

    c.  Mark Loman, who is employed as a Correctional Sergeant at the Elmore

        Correctional Facility in Elmore, Alabama.

    d.  Robert Rogers, who is employed as a Lieutenant at the Elmore

        Correctional Facility in Elmore, Alabama.

## DEFENDANTS EXHIBITS[1]

        In accordance with this Court's Order, the Defendants submit the following

exhibits:

1.  Affidavit of Warden Willie J. Thomas with attached incident and disciplinary

    reports

2.  Affidavit of Sergeant Mark Loman

3.  Notary log for March 19, 2007 through May 22, 2007 for Defendant Loman.

 4.  Second Affidavit of Sergeant Mark Loman with attached Notary Log for March

19, 2007 through May 22, 2007 specifically addressing equal protection allegation.

## PLAINTIFF'S ALLEGATIONS

        The Plaintiff makes four allegations in his complaint against the Defendants in

both their official and individual capacities.  First, Plaintiff alleges a violation of his right

of access to the courts. He claims that on April 10th, 2007, the defendant, Sgt. Loman,

refused to notarize a copy of a civil complaint that the Plaintiff wished to file. Plaintiff

claims that he was unable to file his lawsuit as a result of Sgt. Loman's alleged refusal to

notarize the document. Plaintiff further alleges that Sgt. Loman was motivated by racial

bias when he refused to notarize said document.

---

[1] Defense Exhibits 1-3 were submitted with the Special Report filed on June 1, 2007 and are incorporated by reference as if fully set out herein.

The second allegation is that Sgt. Loman refused to notarize the Plaintiff's document because the Plaintiff is black and thus violated the Plaintiff's right to equal protection..  He further alleges that Sgt. Loman notarized the documents of other inmates who were white.

The Plaintiff's third allegation revolves around a grievance that he filed against Defendant Loman as a result of his refusal to notarize the Plaintiff's document.   In his grievance that was filed with Warden Thomas,  the Plaintiff alleged that Defendant acted unprofessionally and arbitrarily when he refused to notarize the Plaintiff's documents. Upon being informed of the grievance by Warden Thomas, Defendant Loman filed a disciplinary against the Plaintiff charging that the Plaintiff had violated rule 41 by lying or making false statements in his grievance against Defendant Loman.  Thus, the Plaintiff alleges in his complaint that this disciplinary was brought in retaliation for the grievance that he filed against Defendant Loman.

Finally, the Plaintiff alleges that Defendants Loman and Rodgers unlawfully violated his rights by finding him guilty of the disciplinary.  The Plaintiff fails to aver which rights were violated and the Defendants assume that it is Due Process.

It should be noted that the Plaintiff does not make any factual allegations against Defendants Allen and Thomas.

The Plaintiff seeks compensatory damages in the amount of $200,000 for this alleged deprivation of his constitutional rights and injunctive relief.

## **DEFENDANTS' RESPONSE**

Defendants respond to the plaintiff's complaint as follows:

1. Plaintiff's allegation that the defendant refused to notarize his court document because of his race is false.

2. Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC § 1983 or any other cause of action.

3. Plaintiff's claim of denial of access to courts is without merit.

4. Defendants deny that any of the Plaintiff's constitutional rights have been violated.

5. Defendants deny all material allegations not expressly admitted herein and demands strict proof thereof.

6. Defendants assert the defenses of sovereign immunity and qualified immunity pursuant to the Eleventh Amendment and Article I, Section 14, Alabama Constitution of 1901.

7. Defendants assert that they may not be held liable for the actions of their employees or agents because Respondeat Superior is not applicable in 42 U.S.C. § 1983 cases.

8. In their official capacities the Defendants are not persons subject to actions brought pursuant to 42 U.S.C § 1983.

9. Defendant Loman acted at all times in accordance with the Alabama statutes setting forth the duties and responsibilities of a notary public.

## **STATEMENT OF FACTS**

On April 9th, 2007, Inmate Eric Demetrius Evans, Plaintiff, entered Sgt. Mark Loman's office to request Notary service. Sgt. Loman asked Inmate Evans for his inmate identification card and for the name of the document he wanted notarized. Inmate Evans

presented his identification card, but refused to give a name for the document he wished to have notarized. Sgt. Loman explained to Inmate Evans that for his own record keeping purposes he must at least know the name of the document. Alabama law requires that notaries public must keep a register of all of his official public acts.  When Evans still refused to supply the name of his document, Sgt. Loman declined to notarize it. (D.E. 2, Loman Affidavit; D.E. 3, Notary Log).

Inmate Evans filed a written grievance Warden Thomas against Defendant Loman for his refusal to notarize the document. In this complaint, Evans alleged that Sgt. Loman had denied him access to the court and acted unprofessionally towards him. He further alleged that because Loman notarized a white inmate's documents immediately after declining to notarize Evans' documents, Loman's decision must have been motivated by racial bias. (D.E. 1, Thomas Affidavit; D.E. 2, Loman Affidavit).

Upon being served with Evans' complaint against him, Sgt. Loman charged Inmate Evans with violation of rule number 41, "Lying or making false statements or charges," due to his claim that Loman had acted unprofessionally and denied him access to the courts. Loman also charged Inmate Evans with violation of rule number 57, "Insubordination," due to his claim that Loman is racially biased. (D.E. 2, Loman Affidavit; D.E. 1, Thomas Affidavit).  Pursuant to a hearing conducted by Defendant Rogers, the Plaintiff was found to be guilty of the charges and punishment imposed. (D.E. 1, Thomas).

Defendant Loman periodically notarizes documents for inmates and keeps a log of his activities as required by Alabama law.  He notarized documents on March 19, March 27,  April 9, April 24, April 30, May 22, 2007 and these activities are reflected in

the log attached to Exhibit 4, the second Affidavit of Loman.  An examination of the log shows that on the days preceding and including April 9, the day that the Plaintiff requested the services of Loman, that Sgt. Loman notarized fifteen (15) documents for eight (8) black inmates and seven (7) white inmates before refusing to notarize the Plaintiff's document.  All total, between March 19, 2007 and May 22, 2007, Sgt Loman notarized documents for thirty-one (31) inmates, sixteen (16) black inmates and fifteen (15) white inmates as indicated by the letters B and W placed to the left of each inmates A.I.S. number by Sgt Loman upon request of counsel.  Sgt. Loman did not refuse to notarize the Plaintiff's documents due to his race.  (Exhibit 4, Second Loman Affidavit with attached Notary Log containing annotations).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton, 883 F.2d 923* (11th Cir. 1989). Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some evidence with respect to each element

of his claim, all other issues of facts become immaterial and the moving party is entitled

to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

*Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails
> to establish a prima facie case. "In such a situation, there can be
> 'no genuine issue as to any material,' since a complete failure of
> proof concerning an essential element of the non-moving party's
> case necessarily render all other facts immaterial." [Citation
> omitted]. Thus, under such circumstances, the public official is
> entitled to judgment as a matter of law, because the plaintiff has
> failed to carry the burden of proof. This rule facilitates the
> dismissal of factually unsupported claims prior to trial. 898 F.2d at
> 1532.

## ARGUMENT

### I. Allegations

### a. Access to Courts

The Plaintiff alleges that he was denied access to the courts by the arbitrary and

racially motivated action of Defendant Loman in refusing to notarize documents.

"Access to the courts is clearly a constitutional right, grounded in the First Amendment,

the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the

Fourteenth Amendment." *Chappell v. Rich,* 340 F.3d 1279, 1282 (11th Cir.2003), *cert.*

*denied ,* 540 U.S. 1219, 124 S.Ct. 1508, 158 L.Ed.2d 154 (2004).

The Supreme Court, however, has clarified that prisoners' contentions of

deprivations of access to courts must show actual injury as a "constitutional prerequisite."

*Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *see*

*Weaver v. Brenner,* 40 F.3d 527, 533 (2d Cir.1994) (recognizing that, when judicial

decisions subsequently delineate that a right that generally appeared to exist at the time of the government official's conduct did not actually exist, then "the conduct will not subject the official to liability"). While *Bounds* guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. *See Lewis,* 518 U.S. at 349-51, 116 S.Ct. at 2179-80. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. *Id.* at 355-57, 116 S.Ct. at 2182. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355, 116 S.Ct. at 2182.

In the present case the Plaintiff has not alleged any injury beyond making his conclusory allegation that he has been denied access to the courts.  He, for example, has not alleged that his motion for summary judgement was denied in a pending case due to the lack of notarization of his affidavit or other document.   In fact, the  Plaintiff handicaps himself in saying that he is injured by Loman's refusal because sworn pleadings are not the norm in the state or federal courts.

Defendant Loman refused to notarize the Plaintiff's document because of the desire of the Plaintiff to conceal the document from the Defendant at least in part by his refusal to state the title of the document.  Defendant Loman was well within his rights because Alabama law requires that he as a notary public keep a register of his notarial acts which necessitates his knowledge of the title of the document.

Under Ala. Code § 36-20-7 (1975), a notary public is required to "keep a fair register of all his official acts." A copy of Defendant Loman's notary log or register is

attached as Defense Exhibit 3.  Plaintiff alleges that Sgt. Loman refused to notarize his court documents because of his (Inmate Evans) race which Sgt. Loman disputes.  Rather Loman refers to the requirements imposed upon him by § 36-20-7 as being the reason for his refusal to notarize the document in question.. Loman correctly points out that he is required by law to keep a register of his official acts. He further states that Inmate Evans refused to give him the name of his document so that he (Loman) could comply with the statute. In his complaint, Inmate Evans does not deny Sgt. Loman's allegation that he refused to give the name of his document, nor does he offer any proof that race was a motivating factor in Loman's decision not to notarize. Therefore, Inmate Evans's allegations are unfounded and his complaint must be dismissed.

**b.  Equal Protection**

The Plaintiff alleges that Sgt Loman unlawfully discriminated against him upon the basis of his race, thus violating his Fourteenth Amendment right to equal protection, when Sgt Loman refused to notarize his documents yet notarized those of a white inmate. On April 9, 2007, the Plaintiff presented documents to Sgt. Loman to notarize and when the Plaintiff refused to comply with his request for the information necessary for him to keep a notary register or log as required by Alabama law, to wit, Ala. Code 1975, § 36-20-7, Sgt. Loman refused to perform the notary services.  When Sgt. Loman notarized the document of a white inmate, obviously a more compliant and cooperative inmate, the Plaintiff concluded that he had been denied Equal Protection because he believed that Sgt. Loman discriminated against him on the basis of his race.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S.

Const. amend. XIV, § 1. "The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.' " *Lofton v. Sec'y of Dept. of Children & Family Servs.,* 377 F.3d 1275, 1277 (11th Cir.2004) (quoting *Lehr v. Robertson,* 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)).

In order to set forth a claim cognizable under the Equal Protection use, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n,* 785 F.2d 929, 932-33 (11th Cir.1986) (per curiam)." *Jones v. Ray,* 279 F.3d 944, 946-947 (11th Cir.2001). Additionally, to succeed on an equal protection challenge, the plaintiff must demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White,* 992 F.2d 1548, 1573 (11th Cir.1993); *E & T Realty v. Strickland,* 830 F.2d 1107 (11th Cir.1987).

"[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York,* 500 U.S. 352, 359 (1991).

In a case such as this one, where the plaintiff challenges actions of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles,* 851 F.2d 1307, 1310 (11th Cir.1988). Moreover, mere differential treatment of inmates, without more, fails to allege a violation of the Equal Protection Clause. *E & T Realty Company v. Strickland,* 830 F.2d 1107 (11th Cir.1987), *cert. denied,* 485 U.S. 961 (1988); *McKleskey v. Kemp,* 481 U.S. 279 (1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

In his second affidavit, Exhibit 4, Sgt Loman specifically denied discriminating against the Plaintiff on the basis of his race. Rather, as set forth in the totality of his testimony, Sgt. Loman did not notarize the Plaintiff's document because the Plaintiff refused to cooperate and to provide the information necessary for Sgt. Loman to comply with Alabama's requirement that he keep a register or log of his notarial services. To remove this issue from the realm of a swearing match, Sgt Loman submitted his notarial log for the court's inspection, complete with annotations of B for black and W for white to indicate the race of every inmate for whom he performed notarial services between March 19, 2007 and May 22, 2007. Both before and after April 9, 2007, over 50 percent of the inmates for whom Sgt Loman notarized documents were black. One might conclude that the preponderance of the evidence is contrary to the Plaintiff's allegations of a violation of his Equal Protection rights.

Sgt. Loman did not discriminate against the Plaintiff on the basis of his race and the Plaintiff's Equal Protection claim cannot be substantiated.

**c. Retaliation**

The Plaintiff alleges that Defendant Loman retaliated against him for filing the grievance against him by bringing false disciplinary charges against him.  Essentially, the Plaintiff avers that he was subjected to retaliation for his efforts to gain access to the courts as well as for his grievance against Defendant Loman.  In the grievance, included within materials attached to D.E. 1, affidavit of Thomas, the Plaintiff stated that:

> On April 9, 2007, Sgt Logan (sic), COII denied me notary service of my legal papers for no good cause.  I contend that Sgt Logan did in fact notarized a white inmate's legal papers with no problem;  Therefore, Sgt Logan violated my First Amendment of the United States Constitution [illegible] access to the courts, and a deliberate indifference also violated his oath of office.  Under Title 14-3-16 of the code of Alabama 1975.  I finally contend that Sgt.  Logan actions was unprofessional like conduct of a D.O.C. official.

Upon being informed of the grievance, Defendant Loman filed two disciplinaries charging the Plaintiff with violations of Rules 41, Lying or making a false statement or charge,  and Rule 57, Insubordination.  Separate hearings were held on each disciplinary on 19 April 2007 before Defendant Rogers as the hearing officer.  Upon a consideration of the evidence, the Plaintiff was found guilty of both charges with appropriate punishment imposed.

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich,* 340 F.3d 1279, 1282 (11th Cir.2003), *cert. denied ,* 540 U.S. 1219, 124 S.Ct. 1508, 158 L.Ed.2d 154 (2004).

A prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. *See Farrow v. West,* 320

F.3d 1235, 1248 (11th Cir.2003); *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome,* 795 F.2d 964 968 (11th Cir.1986); *Adams v. James,* 784 F.2d 1077, 1080 (11th Cir.1986). In the prison setting "the state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives ... nor act with the intent of chilling that First Amendment right." *Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir.1995) (citing *Turner v. Safley,* 482 U.S. 78, 85-89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989)). In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment." ' *Farrow,* 320 F.3d at 1248 (citing *Wildberger,* 869 F.2d at 1468). The prisoner must, however, come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (citations omitted).

In this case, the Plaintiff complained about being denied access to the courts in a grievance against Defendant Loman. However, the grievance was based upon a lie or false grounds, to wit, that the denial was due to racial prejudice upon the part of Defendant Loman when the uncontroverted testimony is that Loman performs notary services for black and white alike and that his refusal to notarize the Plaintiff's document was based upon his willful refusal to furnish necessary information to Loman so that Loman could keep a log or register of his activities as required by Ala. Code 1975 § 36-

20-7.  Indeed, over half of the inmates for whom Loman has notarized documents are black.

 An inmate has a First Amendment right to file grievances against prison officials, but only if the grievances are not frivolous. See *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ( "Depriving someone of a frivolous claim ... deprives him of nothing....").  Clearly a grievance based upon false statements is frivolous.  Thus it is hard to comprehend how punishment for making what amounts to a false official statement is retaliation for seeking to exercise Plaintiff's right to access to the courts and right to file non-frivolous grievances.

### D.  Due Process

The Plaintiff generally alleges that Defendants Rogers and Loman wrongfully convicted him of the disciplinaries.  Rogers was the hearing officer.  Loman was the officer who brought the charges and a witness.  The punishment imposed upon the Plaintiff in each disciplinary was "30 days loss of visiting, phone and store; refer to classification."

The Defendants assume that the Plaintiff claims a violation of Due Process. However, before Plaintiff may suffer a deprivation of his due process rights, he must have an interest to which the right to due process attaches. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974 (1974); U.S. CONST. AMEND. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without **due process** of law ...."").

In the context of a prison disciplinary, the decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), controls the determination of whether a prisoner has a liberty

interest to which due process attaches. In *Sandin,* the Supreme Court found that there was no right based directly on the Due Process Clause not to be placed in disciplinary segregation and that there was no state-created liberty interest to be free from disciplinary segregation when an inmate challenged his 30-day segregation sentence based on a due process violation. *Id.* at 487, 115 S.Ct. at 2302. In concluding that no liberty interest was implicated by placement in disciplinary segregation, and thus no due process was required, the Court stated its holding was a return to the due process principles of *Wolff, supra,* and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532 (1976), that required an inmate to suffer a "grievous loss" before a liberty interest would be found. *Sandin,* 515 U.S. at 480-83, 115 S.Ct. at 2298-2300. The *Sandin* Court ruled that future liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." [FN2] *Id.* at 480, 484, 115 S.Ct. at 2298, 2300. The Court concluded that confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, was the type of discipline a prisoner should expect as an incident to his criminal sentence, and "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485-86, 115 S.Ct. at 2301. The Court ruled the prisoner did not have a protected liberty interest based on the subject prison regulation or the Due Process Clause itself entitling him to *Wolff's* procedural protections. *Id.* at 487, 115 S.Ct. at 2302.

The Constitution does not grant an inmate a right in visitation, store, and telephone privileges. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Moore v. Pemberton,* 110 F.3d 22, 23 (7th Cir.1997) (finding no loss of liberty or property when prisoner received as disciplinary punishment a verbal reprimand, two-week loss of commissary privileges, and a suspended, 15-day disciplinary segregation sentence).

Interestingly enough, Defendant Loman was involved in another case recently in which this Honorable Court, Judge Watkins presiding, held that a loss of store, telephone, visitation and other punitive measures did not involve a liberty interest.  See *Walker v. Loman,* 2006 WL 3327663, at *3 (M.D.Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). And the Alabama courts have determined a prisoner does not have a liberty interest in store, telephone and visitation privileges. *Dumas v. State,* 675 So.2d 87, 88 (Ala.Crim.App.1995).

## II. Defendants assert the defenses of sovereign immunity and qualified immunity.

In *Alabama v. Pugh*, 438 U.S. 781, the U.S. Supreme Court held that officers at a Department of Corrections facility *are* protected by the Eleventh Amendment's grant of immunity to states and state agencies. Like in *Pugh*, the defendants in the case at hand are also employees of a state correctional facility. Furthermore, these defendants were acting in their official capacities as corrections officers when the alleged constitutional deprivation occurred. Therefore, since the defendants enforce state policies and serve as

state officials, they should be entitled to assert the defenses of qualified immunity and sovereign immunity.

The doctrine of qualified immunity protects government officials who are performing discretionary functions from being sued under 42 U.S.C.A. § 1983, so long as said government officials' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603 (1999). The defense of qualified immunity is available only to an official sued in his individual or personal capacity. *Walker v. Board of Trustees, Regional Transp. Dist.*, 76 F. Supp. 2d 1105 (1999). A government official sued in his official capacity has no immunity other than that which is provided by the governmental entity which employs him. *Hafer v. Melo*, 502 U.S. 21 (1991). In evaluating the objective reasonableness of the act at issue, a court must determine whether the legal rules governing that act were clearly established at the time the act was taken. (*id*.)

42 U.S.C.A. § 1983 does *not* override the grant of immunity guaranteed to all states by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). This grant of immunity protects states from being sued in federal court (*id*.) The Eleventh Amendment also shields individual agents and agencies of states from liability under § 1983. *Doe By and Through Doe v. Petaluma City School Dist.*, 830 F. Supp. 1560 (1993). Therefore, a state agent acting in his official capacity enjoys immunity against suit just like a state entity would. *Gangloff v. Poccia* 888, F. Supp. 1549 (1995). A suit against a state official in his/her official capacity is, essentially, a suit against the state.

The Defendants did not violate the constitutional rights of the Plaintiff and therefore are entitled to the benefit of qualified immunity in their individual capacities and to the benefit of sovereign immunity pursuant to the Eleventh Amendment and Article I, Section 14 of the Alabama Constitution of 1901 in their official capacities.

### III.  Respondeat Superior

The law is well settled that a defendant  cannot be held liable, individually or in his official capacities, for actions brought pursuant to 42 U. S. C. § 1983 under the doctrine of respondeat superior or on the basis of vicarious liability.  *Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir 1994); Brown v. Crawford, 906 F. 2d 667, 671 (11th Cir. 1990); Zatler v. Wainwright, 802 F. 2d 397, 401 (11th Cir. 1986).*

<u>**CONCLUSION**</u>

Plaintiff has failed to state a claim upon which relief can be granted pursuant to 42 USC § 1983 or any other source. Furthermore, plaintiff's allegation that the defendant refused to notarize his court document because of his race is incorrect, and plaintiff's claim of denial of access to courts is without merit. None of the plaintiff's constitutional rights were violated as a result of Sgt. Loman's refusal to notarize his document.  The Defendant did not suffer retaliation by the filing of the disciplinaries nor was he denied due process in the disciplinary hearings.

The Defendants respectfully submit that there is no issue of material fact and they are entitled to judgement as a matter of law.

Respectfully Submitted,

Troy King
Attorney General


/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General


ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 (fax)
jwallace@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 29th day of June, 2007, served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Eric Demetrius Evans, AIS 249159
Elmore Correctional Facility
PO Box 8
Elmore, AL 36025


/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC DEMETRIUS EVANS, 249159, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : Case No. 2:07-CV-345-MHT | |
| | : | |
| WILLIE THOMAS, et al., | : | |
| | : | |
| Defendants. | : | |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at

Large, personally appeared Mark Loman, who being known to me and being by me first

duly sworn, deposes and says:

My name is Mark Loman. I am currently employed with the Alabama Department of

Corrections as a Correctional Sergeant at Elmore Correctional Facility in Elmore, Alabama. I am

over twenty-one (21) years of age.

I did not deny inmate Evans Notary service because of his race.

A copy of my Notary Log for the period of March 19, 2007 to May 22, 2007, which is

before and after inmate Evans requested my services as a Notary, is attached. This log lists the

names of the black inmates for whom I provided Notary service during this period. Black inmates

are identified with a "B" beside their AIS number. This log proves that I notarized a near equal

number of documents for black inmates as I did for white inmates during this same period.

I hereby certify the attachment to this affidavit to be a true and correct copy of my Notary

Log for the period of March 19, 2007 to May 22, 2007. I maintain my Notary Log according to the

laws governing the duties of Notaries Public.

I

_____

MARK LOMAN

STATE OF ALABAMA:

COUNTY OF ELMORE:

Sworn to and subscribed before me and given under my hand and official seal on this the

_____ of June, 2007.

_____

NOTARY PUBLIC

My Commission expires February 5, 2011

2

# NOTARY LOG

(Unit) ECC

NOTARY PUBLIC: Mark Loman

COUNTY OF: _____

| DATE | INMATE'S NAME | A.I.S.NUMBER | ITEM NOTARIZED | NTR. INT. |
|------|---------------|--------------|----------------|-----------|
| 3/18/07 | Beerman, Frank | D/237584 | motion for reconsideration | |
| | Jackson, Antoine | D/245123 | Rule 32 | |
| | Taylor, Jerome | D/150118 | General Power of Attorney | |
| | McClain, Ronnie | D/133858 | Complaint | |
| 3/27/07 | Lawrence, Michael | W/215583 | Bill of Sale | |
| | Ragland, Jackie | D/248615 | Request for disposition | |
| | Nolan, James | D/199861 | Hardship | |
| | Mims, Christopher | W/248214 | Power of Attorney | |
| | Steber, Harry | W/207606 | motion to plead guilty | |
| | Sundberg, Kenneth | W/154261 | Habeas Corpus  Hardship | |
| | Daniels, Arthur | D/247883 | Release for Settlement | |
| | Pope, Victor | D/236821 | Bank withdrawal | |
| | Parmador, Stalet | W/180836 | Reduction of Penalty | |
| | Rust, matthew | W/246868 | motion for modification of | |
| 4/9/07 | Martin, Randall  Johnny, Darrel | W/182095  W/227073 | Divorce  motion for rehearing | |
| | Evans, Eric | D/249909 | | |
| 4/27/07 | Smith, Carl | W/233363 | Divorce & hardship | |
| | Olum, Darrly | D/129721 | Parole cut payment | |
| | Gaither, Frankie | W/129879 | Lost property Claims | |
| | Barnes, Antonio | D/200578 | motion for Default | |
| | Smith, Patrick | D/207460 | motion for Parole cut  motion for clarification | |
| 4/30/07 | Starr, Todd | W/226663 | Consent to guardianship | |
| | Gilbreath, James | W/145041 | Hardship Affidavit  Application to plead guilty | |
| | Brundidge, Steve | D/175281 | Representation of case | |

DOC N947L
6-2-89

## NOTARY LOG

(Unit) _____

NOTARY PUBLIC: _____

COUNTY OF: _____

| DATE | INMATE'S NAME | A.I.S.NUMBER | ITEM NOTARIZED | NUM INT |
|------|---------------|--------------|----------------|---------|
| 4/30/07 | Singley, Christopher | W/250552 | Hardship/Divorce | |
| | Locke, Michael | W/245400 | Appl. to plead guilty | |
| | Townsend, Julius | D/278144 | Affidavit | |
| | Arnold, Atlantis | D/185105 | Affidavit | |
| | Lawrence, Michael | W/215513 | 2 Power of Attorney 3 Affidavit | |
| 5/22/07 | McSwain, Bobby | D/174320 | Power of attorney | |
| | Young, Eddie | D/250175 | Petition for Habeus Corpus | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DOC N947L
6-2-89