IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| ERIC DEMETRIUS EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
| v. | ) 2:07cv345MHT |
| | ) (WO) |
| WILLIE THOMAS, Warden, | ) |
| etc., et al., | ) |
| | ) |
| Defendants. | ) |

OPINION

This 42 U.S.C.A. § 1983 action is now before the
court on a complaint filed by plaintiff Eric Demetrius
Evans, a state inmate.  In his complaint, Evans charges
that the defendants, certain prison officials, imposed
disciplinaries against him in violation of his right to
due process, his right to equal protection, his right
against cruel and unusual punishment, and his right of
access to the courts.  Evans names as defendants Alabama
Department of Corrections Commissioner Richard Allen,
Elmore Correctional Center Warden Willie Thomas,

Correctional Officer Mark Loman, and Correctional Officer Robert Rogers.   Evans seeks a declaratory judgment and monetary damages.

The defendants filed a special report, supplemental special report, and supporting evidentiary materials addressing Evans's claims.   Pursuant to the orders entered in this case on July 2, 2007, the court deems it appropriate to treat these reports as motions for summary judgment.  Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support of them, and Evans's response in opposition to the motions, the court concludes that the defendants' motions for summary judgment should be granted.


I.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any

2

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

On April 9, 2007, Officer Loman conducted notary service for the inmates confined at Elmore Correctional Center. Loman notarized a document, identified as a "divorce," for a white inmate. Evans, who is African-American, then presented a document to Loman for notarization. Because Evans described the document merely as one regarding a civil lawsuit, Loman initially refused to notarize it and advised Evans that he needed to identify the document more adequately. Loman

3

subsequently declined to notarize the document because Evans would not identify "the title of the document." Loman states that: "Notaries are required by law to know the name or title of the document they are asked to notarize. Inmate Evans refused to give me the proper name or title of the document he wanted notarized."

On April 10, 2007, Evans filed an internal grievance against Loman "for denying [him] notary service." In this grievance, Evans alleged that Loman "denied [him] notary service ... for no good cause" and did not notarize his legal papers document due to his race. Evans also asserted that Loman deprived him of access to the court and acted in an unprofessional manner.

This same day, Loman initiated disciplinary actions against Evans for violations of Prison Rule #41 (lying or making false statements) and Prison Rule #57 (insubordination). Officer Walter Newberry served Evans with notice of the disciplinary charges and of the date scheduled for the disciplinary hearings. Upon completion

4

of the noticed disciplinary hearings, at which time Evans
presented evidence and Loman provided testimony regarding
Evans's allegations, Officer Rogers found Evans guilty of
the charged offenses.  Evans was sanctioned with loss of
visitation, phone, and store  privileges for 30 days and
referral for review of his classification status.

III. DISCUSSION

A.  Absolute Immunity

With respect to any claims lodged against the
defendants in their official capacities, they are immune
from monetary damages.  Official-capacity lawsuits are
"in all respects other than name ... treated as a suit
against the entity." Kentucky v. Graham, 473 U. S. 159,
166 (1985).  A state official may not be sued in his
official capacity unless the state has waived its
Eleventh Amendment immunity, Pennhurst State School &
Hospital v. Halderman, 465 U.S. 89, 100 (1984), or
Congress has abrogated the State's immunity, Seminole

Tribe v. Florida, 517 U.S. 44, 59 (1996). Alabama has not waived its Eleventh Amendment immunity, Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from monetary claims brought against them in their official capacities. Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. Lancaster, 116 F.3d at 1429; Jackson v. Georgia Department of Transportation, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them by Evans in their official capacities. Pennhurst, 465 U.S. at 98-100; Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989).

6

## D.  Due Process

Evans complains that the defendants denied him due process regarding the disciplinary proceedings related to alleged insubordination and false statements.  Under the circumstances of this case, Evans's due-process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner (an individual already deprived of his liberty in the ordinary sense) may be further deprived of his liberty such that due process is required.  The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>see, e.g.</u>, <u>Vitek v. Jones</u>, 445 U.S. 480, 492-93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the State has consistently given a certain benefit to prisoners (for instance, in a statute or administrative policy), and the deprivation of

that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see, e.g., Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); cf. Dudley v. Stewart, 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the State creates liberty interests).  In the first situation, the liberty interest exists apart from the State; in the second situation, the liberty interest is created by the State. Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  Sandin, 515 U.S. at 485-486 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); Meachum v. Fano, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low to maximum-security prison because

"[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); Olim v. Wakinekona, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least-restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. Sandin, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in

9

relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  Thus, the deprivations imposed upon Evans based on the challenged disciplinaries did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  Id.  This court must therefore determine whether the actions about which Evans complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in Sandin.

As the Supreme Court opined,

> "Sandin involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  Sandin observed that some of our earlier cases, Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized 'the language of a particular [prison] regulation' instead of 'the nature of the deprivation.' Sandin, 515 U.S., at 481, 115 S.Ct. 2293.  In Sandin, we criticized this methodology as creating

a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. Id., at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in Wolff [v. McDonnell, 418 U.S. 539 (1974),] and Meachum [v. Fano, 427 U.S. 215 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' [Sandin, 515 U.S.] at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

"After Sandin, it is clear that the touchstone of the inquiry into the

11

> existence of a protected, state-created
> liberty interest in avoiding restrictive
> conditions of confinement is not the
> language of regulations regarding those
> conditions but the nature of those
> conditions themselves 'in relation to the
> ordinary incidents of prison life.' <u>Id.</u>,
> at 484, 115 S.Ct. 2293."

<u>Wilkinson v. Austin</u>, 545 U.S. 209, 222-223 (2005).

Applying the <u>Sandin</u> inquiry, the court concludes that the temporary loss of canteen, phone, and visitation privileges and the referral of an inmate for review of his classification level, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. <u>Sandin</u>, 515 U.S. at 485. In light of the foregoing, it is clear that the sanctions at issue fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. Consequently, Evans's theory of liability under the law as established in <u>Sandin</u> is meritless and, therefore, frivolous within the meaning of 28 U.S.C.

12

§ 1915(e)(2)(B)(i).  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327
(1989).


### C.  Equal Protection

Evans asserts Loman acted in violation of his right to
equal protection by denying him notary service while
providing the same to a white inmate.  This claim entitles
Evans to no relief.

In order to establish a claim cognizable under the
Equal Protection Clause, "a prisoner must, at a minimum,
demonstrate that (1) he is similarly situated to other
prisoners who received more favorable treatment; and (2)
the state engaged in invidious discrimination against him
based on race, religion, national origin, or some other
constitutionally protected basis.  <u>Jones v. Ray</u>, 279 F.3d
944, 946-47 (11th Cir. 2001); <u>Damiano v. Florida Parole and
Prob. Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986)."
<u>Sweet v. Secretary, Department of Corrections</u>, 467 F.3d
1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will

13

not be held unconstitutional solely because it results in a ... disproportionate impact. ... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." <u>Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Personnel Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256, 279 (1979) (footnote and citation omitted); <u>see also</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 359 (1991). Evidence that merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. <u>McKleskey v. Kemp</u>, 481 U.S. 279, 292 (1987). Since this case is before the court on

14

a properly supported motion for summary judgment from the defendants, Evans bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-324 (1986); <u>Waddell v. Valley Forge Dental Associates, Inc.</u>, 276 F.3d 1275, 1279 (11th Cir. 2001).  Evans cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252 (1986).  Instead, the law is clear that Evans must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants.  <u>Id</u>. at 249.

Initially, the court finds that the white inmate identified by Evans as receiving more favorable treatment was not truly similarly situated to Evans for this white inmate provided the requisite information to Loman for

15

purposes of receiving notary service, whereas Evans refused to provide this information. Thus, Evans's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." Sweet, 467 F.3d at 1319.

Additionally, it is clear from the only evidentiary materials properly before the court that Loman refused notary service to Evans solely because Evans refused to identify properly the document he sought notarized. Evans has utterly and completely failed to present any evidence, significantly probative or otherwise, that his race constituted any factor, much less a motivating factor, in the decision to deny him notary service. The defendants are therefore entitled to summary judgment on this claim.

### D.   Cruel and Unusual Punishment

Evans maintains the actions taken against him constituted cruel and unusual punishment in violation of the Eighth Amendment.  This claim is without merit.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  Rhodes v. Chapman, 452 U.S. 337 (1981).  Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  Id. at 347; see also Wilson v. Seiter, 501 U.S. 294 (1991).  None of the deprivations resulting from either the notary process or disciplinary actions establishes a sufficiently grave deprivation denying minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment.  Summary judgment is therefore due to be granted in favor of the defendants with respect to the alleged imposition of unconstitutional punishment.


### E.  Access to Courts

Evans contends Loman denied him access to this court when he refused to notarize "legal papers" relative to a response in another case, Evans v. Perkins, Civil Action

17

No. 2:07-CV-100-WHA (M.D. Ala. 2008).  However, in that case, the court received a proper and timely response from Evans, supported by a notarized affidavit, on April 16, 2007.  Evans filed a second such response, again supported by a notarized affidavit, on June 19, 2007.  After reviewing this prior complaint, the defendants' reports and Evans's responses in opposition to the reports, the court determined in the other case that the defendants were entitled to summary judgment.

The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 825 (1977).  In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in Bounds.  Specifically, the Court held that "an inmate alleging a violation of Bounds must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials.

18

Lewis, 518 U.S. at 349.  In identifying the particular right protected by Bounds, the Court explained that: "Bounds established no ... right [to a law library or to legal assistance].  The right that Bounds acknowledged was the (already well-established) right of access to the courts....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  Id. at 350-351 (emphasis in original) (citations omitted).  The Court further opined that: Bounds did not require "that the State ... enable the prisoner to discover grievances, and to litigate effectively once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  Id. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. Id. at 349. Moreover, Lewis emphasized that a Bounds violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "Bounds, ... guarantees no particular methodology but rather the conferral of a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. Lewis, 518 U.S. at 356. Finally, the Court discerned: The injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or

conditions of confinement. ... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." <u>Id</u>. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." <u>Id</u>. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. <u>Id</u>. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [<u>Bounds</u>, 430] U.S. at 832-833, 97 S.Ct. at 1500." <u>Id</u>. at 363.

21

The record in this case and the other case filed by Evans with this court in 2007 establish that prison personnel provided Evans access to legal materials during his confinement at the Elmore Correctional Center and in no way inhibited his preparation of legal documents, filing of pleadings, or processing of any cause of action. In addition, throughout the proceedings in this case and his other case, Evans repeatedly demonstrated he is both proficient and prolific at presenting and arguing the claims of his choice to this or any other court. Nothing in either record indicates that the action about which Evans complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Instead, the records of this court establish that Evans received notary service in his prior case and properly filed all necessary responses. Evans has utterly and completely failed to come forward with any evidence that the action about which he complains deprived him of the capability of pursing claims in this or any other court. Thus, Evans

22

does not establish he suffered the requisite injury, <u>Lewis</u>, 518 U.S. at 356, and defendants are therefore entitled to summary judgment in this case.  <u>Barbour v. Haley</u>, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); <u>Chandler v. Baird</u>, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage....").

### F.  Conspiracy

In his complaint, Evans makes specious assertions that all of the adverse actions about which he complains resulted from a conspiracy among the defendants to deny him his constitutional rights.  The evidentiary materials filed by the defendants refute these assertions.

A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy.  <u>Fullman v. Graddick</u>, 739 F.2d

553, 556-557 (11th Cir. 1984).  The court has carefully reviewed Evans's allegations of a conspiracy.  At best, the assertions made by Evans are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy among the named defendants.  Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988) (to state properly a claim for relief based on a conspiracy, a plaintiff must, at the least, plead facts demonstrating that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing that the parties "reached an understanding" to violate plaintiff's rights, is insufficient to allege the existence of a conspiracy).

Other than his suppositious allegations, Evans presents nothing, nor can this court find any evidence, to indicate that the defendants entered into a conspiracy to deprive him of his constitutional rights.  In light of the

24

foregoing, the court concludes that Evans's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983 and are meritless under 28 U.S.C. § 1915(e)(2)(B)(ii).  <u>Harvey</u>, 949 F.2d at 1133; <u>Fullman</u>, 739 F.2d at 556-557.

An appropriate judgment will be entered.

DONE, this the 28th day of September, 2010.


　　　　　　　　　　　<u>　/s/ Myron H. Thompson　</u>
　　　　　　　　　　　UNITED STATES DISTRICT JUDGE